UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAREN CHAN,

    Plaintiff,

v.

CITY OF MILPITAS, et al.,

    Defendants.

Case No. 19-cv-01966-NC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 10

In this civil rights action, plaintiff Karen Chan sues defendants City of Milpitas and Milpitas's Chief Enforcement Officer Eric Emmanuele for shutting down her after-school tutoring business. Chan asserts that Defendants' actions violated the First Amendment, the Fourth Amendment, and the Fourteenth Amendment of the United States Constitution, as well as California's Bane Act. *See* Dkt. No. 1. Defendants now move to dismiss Chan's complaint. *See* Dkt. No. 10. The Court finds that Chan's complaint fails to allege sufficient facts to state a claim. Accordingly, the Court GRANTS Defendants' motion to dismiss with leave to amend.

**I. Background**

    **A. Allegations in the Complaint**

In November 2017, Milpitas provided Chan with permits and documents required to open and operate an after-school tutoring program called Gulu Gulu Learning Academy

("GGLA").[1] Dkt. No. 1 ("Compl.") ¶¶ 12, 13. On June 21, 2018, Emmanuele delivered a cease and desist order to Chan, instructing her to: (1) remove all outside playground structures and all items related to daycare, such as cribs, cots, napping mats, and cooking equipment; and (2) remove all signage and website postings indicating that she provides daycare services. *Id*. ¶ 6. When he delivered the order, Emannuele pounded on the door, demanded entry, and entered the premises without Chan's consent. *Id*.

Chan removed all outside playground structures, as well as all cribs, cots, and napping mats and informed Emmanuele that she had complied with the order. *Id*. ¶ 7. She later appeared at Milpitas's Planning Department to discuss the order with Adrienne Smith, who advised Chan that she "needed to merely comply with the Permit for Occupancy received from the [City] and the operations [of] GGLA could continue unimpeded." *Id*. ¶ 8. During that conversation, a representative of the fire department stated that the fire department had proof that Chan was operating an illegal day care center at GGLA. *Id*. Chan denied that she was doing so and asked to see the fire department's proof. *Id*. The fire department representative ignored Chan's assertion. *Id*.

Later that week, Tuco Doane, who worked for the California Department of Social Services, went to GGLA and determined that one of the seven children present was considered pre-school. *Id*. ¶ 9. The City gave Chan 30 days to either acquire a daycare facility license for GGLA or to move the child to Gulu Gulu Homebase, Chan's licensed daycare operation at a separate location. *Id*.

Approximately ten days later, Emmanuele went to GGLA while the school was in session and, with a "bellowing" voice, indicated that GGLA was to cease operations immediately and ordered everyone to leave the premises. *Id*. ¶ 10. Emmanuele threatened to arrest anyone who did not comply and stated that the children's parents could either pick the children up from the premises immediately or pick them up from the police station. *Id*. Emmanuele executed a cease and desist order on Chan, asked for her driver's license, and

---

[1] The factual allegations in the complaint are assumed to be true for the purposes of this order. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

stated "you are arrested and I am going to send you to jail." *Id*. Chan refused to sign the order and asked to call her attorney and husband. *Id*. Emmanuele allowed Chan to call her attorney, her husband, and the children's parents. *Id*. When Chan's husband arrived, he spoke to Emmanuele and defused the situation. *Id*.

The City placed a notice at the entrance of GGLA, prohibiting entrance without permission from the Milpitas Fire Marshal. *Id*. ¶ 11. Chan received email correspondence from City officials stating various conditions Chan had to meet in order to reopen GGLA. *Id*. The email stated that Chan must immediately remove all items typically associated with daycare operations; Chan must remove or permanently modify all exterior banners and signage reflecting daycare services; GGLA's website must be modified to reflect only tutorial services; Chan must limit operations to after-school hours because GGLA's permit is only authorized for tutoring and after-school instruction; GGLA's programming must be "academic" in nature; programming may only be offered to school-aged children who are already being instructed through regular schooling; and the wrought iron gate enclosing the parking lot was installed without a permit and must be removed. *Id*. ¶ 12.

Soon after, Milpitas discovered there was insufficient curbside space to allow drop-off for children outside GGLA and informed Chan that it had mistakenly issued her a permit. *Id*. ¶ 13. Chan alleges that this has restricted the intended use of the property, thereby substantially reducing the value of her leasehold estate. *Id*. Moreover, following Emmanuele's cease and desist order, several parents removed their children from GGLA, decreasing attendance by 60%. *Id*. ¶ 14.

### B. Procedural History

In October 2018, Chan submitted a demand to Milpitas for damages and Milpitas responded that it could not negotiate a settlement until a formal claim was submitted. *Id*. ¶ 17. She then submitted a claim for damages to the city clerk, pursuant to California Gov't Code § 910, but Milpitas has not yet responded. *Id*. ¶ 18.

On April 11, 2019, Chan filed a complaint asserting: (1) violation of her First Amendment right of free speech and freedom of association under 42 U.S.C. § 1983; (2)

3

excessive force and unreasonable seizure in violation of the Fourth Amendment under 42 U.S.C. § 1983; (3) violation of her Fourteenth Amendment due process rights under 42 U.S.C. § 1983; (4) false arrest; and (5) violation of California's Bane Act, Cal. Civ. Code § 52.1. *See id.* ¶¶ 19–32. Defendants now move to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 10. The motion is fully briefed and the Court held a hearing on June 26, 2019. *See* Dkt. Nos. 14, 15, 20. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 9, 13.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim also "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. Discussion

### A. 42 U.S.C. § 1983

To state a constitutional violation under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state

4

law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Here, Chan alleged constitutional violations of her First, Fourth, and Fourteenth Amendment rights. She also seeks to impose *Monell* liability against Milpitas.

### 1. First Amendment

Chan's first constitutional claim under § 1983 is that Defendants interfered with her First Amendment rights of freedom of speech and association. *Id.* ¶ 20.

#### a. Freedom of Speech

To state a free speech violation under § 1983, the plaintiff must allege that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Menotti v. City of Seattle*, 409 F.3d 1113, 1155 (9th Cir. 2005) (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)); *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("[T]he proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'").

Here, the complaint alleges that Emmanuele's behavior and his threat to arrest Chan interfered with her ability to teach the children at GGLA. Compl. ¶ 20. As an initial matter, it is not clear that Emmanuele and Milpitas's actions would "deter[] or chill[]" future speech. *Menotti*, 409 F.3d at 1155. Indeed, despite her initial encounter with Emmanuele, Chan continued to teach the children at GGLA and continued to engage in First Amendment activity by petitioning Milpitas. *See id.* ¶ 14.

Even if the Court assumes for the sake of argument that Chan has successfully alleged the first element of a free speech claim, the complaint also fails to allege any facts suggesting that Chan's speech was a substantial motivating factor behind Emmanuele or Milpitas's actions. Instead, the complaint alleges that Emmanuele and Milpitas were motivated by a desire to enforce its daycare permitting requirements. *Id.* ¶¶ 6, 9.

In her opposition, Chan appears to argue that Emmanuele violated her First Amendment right of free speech merely by interrupting her instruction on two separate

5

occasions. *See* Dkt. No. 14 at 3–4. This is unavailing. The First Amendment does not protect Chan's ability to be totally free from any interruptions and Chan provides no authority suggesting otherwise. Indeed, if Chan's view of free speech were correct, police officers and government officials would conceivably violate the First Amendment whenever they initiate an unwanted conversation. This seems implausible.[2] Instead, Chan must allege facts that plausibly suggest Emmanuele's interruptions were so substantial that they "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envtl. Ctr.*, 192 F.3d at 1300.

Chan also argues in opposition that Milpitas violated her right to commercial speech by imposing various restrictions on her ability to run her after-school tutoring program. The commercial speech doctrine, however, does not help her. Cities may regulate commercial speech that concerns lawful activity and is not misleading if they "(1) seek to implement a substantial governmental interest; (2) directly advance that interest; and (3) reach no further than necessary to accomplish the given objective." *Desert Outdoor Adver. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996). Chan's allegations, however, all but concede that her prohibited representations were misleading. Chan takes issues with Milpitas's refusal to allow her to advertise her daycare services. *See* Dkt. No. 14 at 5. But, in her complaint, she disavows ever running a daycare. *See* Compl. ¶ 8. Indeed, as the Court understands her Complaint, the crux of this dispute stems from Milpitas's (mis)understanding regarding the type of after-school program Chan runs out of her facilities. Chan asserts that it is a properly-permitted tutoring program, while Milpitas believes it is an unlicensed daycare center. *See id.* ¶¶ 6, 8–9, 12–13. Chan cannot have it both ways.

In short, Chan has not stated a claim for violation of her freedom of speech.

---

[2] Moreover, even if the Court were to entertain the possibility that Defendants violated Chan's free speech rights by interrupting her instruction, Defendants would likely be protected by qualified immunity. Qualified immunity shields government officials from civil liability unless their conduct violates "clearly established" law. *Mattos v. Agarano*, 661 F.3d at 433, 440 (9th Cir. 2011). Chan has not produced any authority suggesting that interrupting an after-school tutoring program violated a clearly established right.

### b. Freedom of Association

"There are two distinct forms of freedom of association: (1) freedom of intimate association [and] (2) freedom of expressive association." *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 458 (9th Cir. 2018) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)). The right to intimate associations protects "highly personal relationships" and "those that attend the creation and sustenance of a family." *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1193 (9th Cir. 1988). Whether a particular relationship qualifies under this right turns on its "size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Fair Hous. Council v. Roommate.com, LLC*, 666 F.3d 1216, 1220–21 (9th Cir. 2012) (citation omitted). On the other hand, the right to expressive associations protects "associations 'engage[d] in expressive activity that could be impaired' by government action." *Santopietro v. Howell*, 857 F.3d 980, 989 (9th Cir. 2017) (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000)).

Chan has not stated a claim under either associative right. First, Chan's allegations do not come close to stating an intimate association claim. The relationship between Chan and her students are not "highly personal" nor do they "attend the creation and sustenance of a family." *IDK, Inc.*, 836 F.2d at 1193. She has alleged no facts suggesting that the relationship between her and her students is highly selective or exclusive. *See, e.g.*, *Fair Hous. Council*, 666 F.3d at 1220–21. Moreover, Chan identifies no case suggesting that an intimate relationship exists between the proprietor of an after-school program and its participants.

Chan also fails to allege an expressive association. Although the First Amendment protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends[,]" this First Amendment right "extends only to *expressive* associations." *Santopietro*, 857 F.3d at 989 (emphasis added and citations omitted). In other words, "to come within its ambit, a group must engage in some form of expression, whether it be public or private." *Dale*, 530 U.S. at 648; *see also Truth*

7

*v. Kent Sch. Dist.*, 542 F.3d 634, 652 (9th Cir. 2008) (Fisher, J., concurring) ("Expressive association is simply another way of speaking, only the group communicates its message through the act of associating instead of through an act of 'pure speech'"). Chan cannot merely assert a "generalized right of 'social association.'" *Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Although Chan's personal act of teaching may well be expressive, she alleges no facts to suggest that her after-school program was engaged in some form of group expression.

Chan further argues in her opposition that she intends to sue on behalf of her students' free speech and associational rights. *See* Dkt. No. 14 at 4. But her students are not named as plaintiffs in this case. Moreover, third-party standing is the exception, not the norm, and Chan has not met the three criteria required to assert the interests of her students. *See Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995) (plaintiff may assert rights of third parties if: (1) she has a "concrete interest in the outcome of the dispute; (2) she has a "close relationship with the part[ies] whose rights [she] is asserting; and (3) "there must exist some hindrance to the third party's ability to protect [their] own interests").

Accordingly, the Court GRANTS Defendants' motion to dismiss Chan's First Amendment claims with leave to amend.

### 2. Fourth Amendment

Chan's next cause of action under § 1983 alleges that Emmanuele violated Chan's Fourth Amendment Rights by using excessive force, unreasonable seizure, and that Emmanuele's actions constituted an unlawful arrest. Dkt. No. 1 ¶ 22. All of Chan's Fourth Amendment claims rest on her allegation that, on July 7, 2018: "[T]he intimidation, threat of imminent arrest and incarceration of the children in [Chan's] charge by an armed assailant, Eric Emmanuele was excessive force and unreasonable seizure in violation of the Fourth Amendment . . . constituting an unlawful arrest." *Id*. ¶¶ 10, 22. Defendants argue that this fails to state a claim. The Court agrees.

### a. Excessive Force

A Fourth Amendment excessive force claim is analyzed under an "objective reasonableness standard." *Saucier v. Katz*, 533 U.S. 194, 204 (2001) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). The objective reasonableness standard "balance[s] the 'nature and quality of the intrusion' against the 'countervailing governmental interests at stake.'" *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting *Graham*, 490 U.S. at 396).

Here, as explained above, Chan's excessive force claim is based on Emmanuele's "appear[ance]" on GGLA's premises, "bellowing" at those present, threatening arrest, and having a pistol strapped in his holster. *See* Compl. ¶ 10, 22. First, "appear[ing]" on GGLA's premises with a holstered weapon is plainly not a use of force, much less the use of excessive force. Chan makes much of the fact that Emmanuele's weapon was "clearly visible." *See id.*; *see also* Dkt. No. 14 at 8. But she does not allege that Emmanuele drew the weapon, only that he had it in his holster. Police officers carry weapons and Chan points to no case law suggesting that officers must have their weapons concealed. Chan's reliance on *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002) for the contrary proposition is misplaced. *See* Dkt. No. 14 at 8. In *Robinson*, the officer drew his weapon and pointed it at the plaintiff's head. *See Robinson*, 278 F.3d at 1013. Here, Emmanuele did not even draw his gun.

Rather, Chan's only allegation that could be construed as a use of force is Emmanuele's threat of arrest and yelling in a "bellowing voice." *Id.* ¶ 10. Assuming for the sake of argument that yelling constitutes a use of force, it is far from clear that Emmanuele's use of force was excessive. And even if yelling was an excessive use of force, Emmanuele is entitled to qualified immunity here. Officers are entitled to qualified immunity if their conduct does not violate a "clearly established" right. *Mattos*, 661 F.3d at 433, 440. Chan points to no case law clearly establishing that yelling, without more, constitutes excessive force. Indeed, Chan relies solely on *Robinson* to argue that Emmanuele acted with excessive force but, as explained above, *Robinson* is inapposite.

9

### b. Unreasonable Seizure

The Fourth Amendment prohibits unreasonable seizures. A seizure "occurs when a law enforcement officer, through coercion, 'physical force[,] or a show of authority, in some way' . . . communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (quoting *United States v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004)). A seizure is lawful, however, if the seizing officer has reasonable suspicion of criminal activity and the seizure was "sufficiently brief and minimally intrusive." *Washington*, 387 F.3d at 1069. Likewise, a warrantless arrest is reasonable if the officer has probable cause. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Although Chan's allegations are not entirely clear, she has sufficiently alleged that she was seized. According to Chan, Emmanuele ordered "all those present" at GGLA on July 7, 2018, to leave the premises. Compl. ¶ 10. Then, Emmanuele threatened to arrest any individual who did not leave the premises, before asking for Chan's driver's license and stating that "[Chan is] arrested and I am going to send you to jail." *Id.* Assuming these allegations are true, as the Court must on a motion to dismiss, a reasonable person would understand that she is not free to "ignore the police presence and go about [her] business" when she had just been threatened with arrest and is then told that she is under arrest. *Hopkins*, 573 F.3d at 773.

Chan's allegations, however, also demonstrate that Emmanuele had at least probable cause to arrest her. Emmanuele was executing the June 21, 2018, cease and desist order during the July 7 arrest. *See* Compl. ¶ 10; *see also id.*, Ex. 1. That order makes clear that Chan was committing a misdemeanor by continuing to operate GGLA. *Id.*, Ex. 1 at 1. When Emmanuele arrived at GGLA on July 7, Chan admits that she was still operating GGLA. *See id.* ¶ 10. Emmanuele therefore had probable cause that Chan was in violation of the order and could effect a lawful arrest.

Accordingly, the Court GRANTS Defendants' motion to dismiss Chan's Fourth Amendment claims with leave to amend.

10

####        c.      Unreasonable Search

In her opposition, Chan also argues that Emmanuele conducted an unreasonable search. *See* Dkt. No. 14 at 7. Nowhere in her complaint, however, did Chan allege that Emmanuele searched her premises. On a motion to dismiss, the Court is limited to the allegations in the operative complaint. *See Lee*, 250 F.3d at 688. Accordingly, the Court disregards Chan's arguments regarding an unreasonable search. Chan may, however, amend her complaint to allege facts plausibly suggesting that Emmanuele conducted an unreasonable search.

### 3.     Fourteenth Amendment Due Process

The Due Process Clause of the Fourteenth Amendment promises that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082 (9th Cir. 2010) (quoting *Brewster v. Bd. of Educ.*, 149 F.3d 971, 984 (9th Cir. 1998)). In other words, the government usually must provide some kind of hearing before depriving a person of their property. *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (quoting *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015)). The Due Process clause, however, "does not always require a full evidentiary hearing or a formal hearing." *Id.*; *see also Mathews v. Elridge*, 424 U.S. 67, 86 (1972) (identifying three-part test to determine whether a pre-deprivation hearing is required and what procedures are necessary). And, in some instances, post-deprivation process alone may satisfy due process. *See Shinault*, 782 F.3d at 1058 (citing *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988)).

Here, Chan's allegations once again fall short. Chan alleged that Milpitas served a cease and desist order regarding GGLA. *See* Compl. ¶ 6. The next week, Chan spoke with City representatives who informed her that she needed a daycare license because at least one of the children was pre-school-aged. *Id.* ¶¶ 8, 9. Because she did not have a license, Milpitas shut down GGLA a few days later. *Id.* ¶¶ 10–11. Then, a few months later,

11

Milpitas informed her of various conditions required to reopen GGLA along with additional issues with the property. *Id.* ¶¶ 12, 13. These allegations make clear that *some* process was provided. It is not clear how Chan alleges these processes were deficient. *See, e.g.*, *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1380–82 (9th Cir. 1989) (applying *Mathews*'s three-part test to a daycare center's permit revocation).

Accordingly, the Court GRANTS Defendants' motion to dismiss Chan's Fourteenth Amendment procedural due process claim with leave to amend.

### 4. *Monell* Liability

Under § 1983, a municipality is only liable when the alleged acts implement a municipal policy or custom in violation of constitutional rights. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978). "Under *Monell*, municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (quotations omitted). In the third situation, a municipality can be liable for a single act or decision so long as the person making the decision has "final policymaking authority." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

Here, Chan failed to state a claim for any constitutional violation. In addition, her allegations of an official policy, long-standing practice, and action by a final policymaker is threadbare and conclusory. *See* Compl. ¶ 15. Accordingly, the Court GRANTS Defendants' motion to dismiss Chan's § 1983 claim against Milpitas with leave to amend.

### B. State Law Claims

Defendants move to dismiss Chan's state law claims. These claims are asserted against Emmanuele directly and against Milpitas vicariously. Compl. ¶ 15. Both state-law claims apply to both Defendants because, unlike federal law, California state law "allows for vicarious liability of a public entity when one of its police officers uses excessive force in making an arrest." *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007) (citing *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215–16 (1991)).

### 1. False Arrest

To state a claim for false arrest, the plaintiff must allege: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)).

Here, Chan's false arrest claim mirrors her Fourth Amendment unreasonable seizure claim. *See* Compl. ¶¶ 27–28. She failed to state a claim for the same reasons. Accordingly, the Court GRANTS Defendants' motion to dismiss Chan's false arrest claim.

### 2. The Bane Act, California Civil Code § 52.1

The Bane Act makes actionable "interfere[nce] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution of or laws of [California.]" Cal Civ. Code § 52.1. In addition, "the Bane Act requires 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801 (Cal. App. 2017)). In other words, it must be that the officer "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Id*. at 1045 (internal citation and quotation marks omitted).

As explained above, Chan failed to allege any violation of her Constitutional or statutory rights. Therefore, she also fails to state a claim under the Bane Act.

## IV. Conclusion

Defendants' motion to dismiss is GRANTED with leave to amend. Chan may amend her complaint to fix the deficiencies identified in this order. Chan is granted leave to allege a Fourth Amendment unreasonable search claim, but she may not add any parties or other claims without further leave of the Court. Chan must file her amended complaint or notify the Court that she does not wish to amend by **August 12, 2019**. If Chan does not file her amended complaint by August 12, the Court will enter judgment for Defendants.

13

**IT IS SO ORDERED.**

Dated: July 17, 2019            _____
NATHANAEL M. COUSINS
United States Magistrate Judge